UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NANCY THOMPSON and WEIBIN LAM, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 4:21-cv-00183-SEP ) |
| GENERAL MOTORS LLC, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs' Motion to Remand. Doc. [14]. The Motion is fully briefed. For the reasons set forth below, the Court will grant the Motion and remand this case to the Circuit Court of the City of St. Louis, Missouri.

**FACTS AND BACKGROUND**

This case arises from a December 2018 automobile accident. An unknown party was driving Defendant Michael Hunter's 2003 Mercury Mountaineer when it ran a red light, hitting a 2008 Chevrolet Corvette that was turning left. Doc. [8] ¶ 52. The Corvette caught fire and exploded, killing both its driver, Nikita Thompson, and its passenger, Chananya Siripaph. *Id.*; Doc. [16] at 8. The unknown driver had taken the Mercury from the street in front of Hunter's house, where Hunter had parked it earlier the same evening, leaving his keys inside. Doc. [8] ¶¶ 51-52. Hunter had purchased the Mercury from Defendant Joe-K Used Cars, LLC (Joe-K). *Id.* ¶ 50.

On July 2, 2019, Nancy Thompson, Nikita Thompson's mother, and Weibin Lam, Chananya Siripaph's husband, brought a wrongful death claim under Mo. Rev. Stat. § 537.080 in St. Louis City Circuit Court against Hunter for negligence and Joe-K for negligent entrustment. Doc. [14-1]; *see* Doc. [8] ¶¶ 1-2. All parties were citizens of Missouri when the action commenced. Doc. [1] at 4-5. On July 31, 2019, Plaintiffs amended the Complaint to include five products liability and negligence claims against Defendant General Motors LLC (GM). Doc. [7]. GM is a citizen of Delaware and Michigan. Doc. [1] at 4-5.

1

On August 27, 2019, GM removed the action to the U.S. District Court for the Eastern District of Missouri on the basis of diversity jurisdiction, arguing that complete diversity existed despite Joe-K and Hunter's Missouri citizenship because those Defendants were fraudulently joined.  Doc. [1] at 1.  Shortly thereafter, Plaintiff Lam moved to amend the complaint to add a negligence claim against Nikita Thompson and his Estate, both citizens of Missouri.  Upon granting the amendment, the Court remanded the action for lack of subject matter jurisdiction. *Thompson v. Joe-K Used Cars, LLC*, No. 4:19 CV 2422 CDP, 2019 WL 7291229, at *3 (E.D. Mo. Dec. 30, 2019).[1]  In February 2020, following remand, Joe-K moved to dismiss the claims against it.  Doc. [1-3].  In response, Plaintiffs voluntarily dismissed those claims.  Doc. [1-4].

Lam settled with Nikita Thompson's Estate for $25,000, the policy limit of Thompson's insurer.  Doc. [14] at 4.  The state court approved the proposed settlement on January 19, 2021, and, upon Lam's request, ordered the settlement funds to be held in escrow until the case's resolution.  *See* Doc. [1-7] ¶¶ 2, 9.  GM again removed the case to this Court on February 12, 2021, asserting diversity jurisdiction.  Doc. [1].  Plaintiffs move to remand on grounds that GM's removal is untimely.  Doc. [14].

## LEGAL STANDARD

The Court must remand if it appears that it lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  In general, "if the case stated by the initial pleading is not removable," a defendant may remove a case within thirty days after it becomes removable.  *Id.* § 1446(b)(3).  But a case that was not originally removable cannot be removed on the basis of diversity jurisdiction "more than 1 year after the commencement of the action," unless the court finds that "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  *Id.* § 1446(c)(1).  The removing party bears the burden of establishing jurisdiction, and federal courts must "resolve all doubts about federal jurisdiction in favor of remand" and strictly construe the removal statute.  *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (quoting *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)).

---

[1] For purposes of its Remand Order only, the Court "assume[d] without deciding" that Hunter and Joe-K were fraudulently joined, "because the case would be remanded even if those defendants were fraudulently joined," as the negligence claim against Nikita Thompson destroyed complete diversity.  *Id.* at *1 n.1, *2-3.

**DISCUSSION**

Plaintiffs argue that this action should be remanded because removal was untimely, citing Section 1446(c)'s one-year limitation on removal of cases that were not removable when originally filed. Doc. [14] at 1-2. GM opposes remand on two alternatives bases. First, GM argues that the one-year limitation does not apply because the action was removable when GM was first added as a party. *See Brown v. Tokio Marine & Fire Ins. Co.*, 284 F.3d 871, 873 (8th Cir. 2002); *see also Williams v. Ford Motor Co.*, 2012 WL 5458919, at *2 (E.D. Mo. Nov. 8, 2012) ("Because it is clear that the instant matter was removable when originally filed . . .[the] one-year limitation does not apply . . . ."). Alternatively, GM contends that, even if it was not removable, the limitation does not apply because Plaintiffs acted in bad faith by fraudulently joining Hunter and Joe-K and later strategically joining the Estate of Nikita Thompson in order to destroy complete diversity. Doc. [15] at 1-2.

**I.    The action was not removable at its commencement.**

In removal cases, federal courts follow state court rules to determine when an action commences. *Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 570 (8th Cir. 1989). Missouri rules provide that "[a] civil action is commenced by filing a petition with the court." Mo. Sup. Ct. R. 53.01. "[C]ourts in the Eastern District of Missouri have reasoned that '[b]ecause removal statutes are narrowly construed, section 1446's one-year limit runs from the initial commencement of an action, rather than any later amendment or other pleading . . . .'" *Jackson v. C.R. Bard, Inc.*, 2017 WL 2021087, at *3 (E.D. Mo. May 12, 2017) (quoting *Devalk v. Wyeth*, 2012 WL 2885904, at *4 (E.D. Mo. July 13, 2012)).

GM argues that the action did not commence until the First Amended Petition, pointing to several Missouri cases holding that, for statute of limitation purposes, a claim does not commence against an individual until the petition is amended to include that individual as a defendant. Doc. [15] at 6-7. But a statute of limitations is assessed in relation to a specific claim against an individual defendant. *See Byrnes v. Scaggs*, 247 S.W.2d 826, 830 (Mo. 1952) ("[T]he filing of the new amended pleading constitutes the commencement of the action in so far as the new defendant is concerned and the statute of limitations runs until the filing of the amended pleading."). The removal statute, by contrast, requires consideration of the civil action as a whole. *See Arnold Crossroads LLC v. Gander Mountain*, 2011 WL 2983511, at *2 (E.D. Mo. July 22, 2011) ("A civil action, viewed as the whole case, . . . can only be commenced once.");

3

*Scollard v. Rocky Mountain Holding Co.*, No. 4:06CV3196, 2007 WL 570303, at *1 (D. Neb. Feb. 14, 2007) (commencement refers to whole action because statute must be construed narrowly, and Congress could have drafted the provision to clearly apply to claims or parties individually) (citing *Sasser v. Ford Motor Co.*, 126 F. Supp. 2d 1333, 1336 (M.D. Ala. 2001)).

In the removal context, to consider an action to "commence" as to a particular defendant when that defendant is named a party—as GM argues—is "wholly incorrect." *Steighorst v. Jevne*, 2006 WL 903244, at *1 (E.D. Mo. Apr. 7, 2006); *see also Rogers v. S. Design & Mech. Inc.*, No. 1:18-CV-01020, 2018 WL 3993396, at *2 (W.D. Ark. Aug. 21, 2018) (applying similar provision of Arkansas Rules). Accordingly, a defendant joined after one year has elapsed cannot remove a case that was not originally removable. *See, e.g.*, *Vasseur v. Sowell*, No. 6:18-03006-CV-RK, 2018 WL 3639834, at *2 (W.D. Mo. July 31, 2018) (remanding upon removal by a defendant that was added over three years after initial, unremovable state complaint). GM cites no authority to the contrary. *See* Doc. [15] at 6-7 & n.5.

For purposes of removal, the action here commenced with Plaintiff's original Petition against Hunter and Joe-K on July 2, 2019. *See* Doc. [14-1]. Hunter and Joe-K were both Missouri citizens; therefore, the action was not removable at its commencement and is subject to § 1446's one-year limitation on removal.[2] Because GM sought removal on February 12, 2021—well over one year after commencement of the action—GM's removal is untimely unless Plaintiffs acted in bad faith to prevent removal.

## II. Plaintiffs did not act in bad faith to prevent removal.

GM argues that even if the action was not initially removable, the one-year limitation is still inapplicable because Plaintiffs acted in bad faith to prevent removal. The Eighth Circuit has not adopted a standard for the "bad faith" exception under § 1446(c), but GM urges the Court to apply the framework outlined in *Aguayo v. AMCO Ins. Co.,* 59 F. Supp.3d 1225, 1275-77 (D. N.M. 2014). *See* Doc. [15] at 12. Though it is not required by any binding authority, this Court has previously adopted the *Aguayo* framework and will likewise apply it here. *See, e.g.*, *Northern ex rel. E.H.S. v. BNSF Ry. Co.*, 2019 WL 3934472, at *2 (E.D. Mo. Aug. 20, 2019); *Bristol v. Ford Motor Co.*, 2016 WL 6277198, at *3 (E.D. Mo. Oct. 27, 2016). Nevertheless, even under its preferred framework, GM's argument fails.

---

[2] Having concluded that the action commenced with the filing of the Petition, the Court does not reach GM's argument that the First Amended Petition was removable. *See* Doc. [15] at 7-10.

4

*Aguayo* sets out a two-step framework. First, a court must determine whether the plaintiff actively litigated the claims in state court. Failure to actively litigate is bad faith, but actively litigating creates a "rebuttable presumption of good faith." *Aguayo*, 59 F. Supp. 3d at 1275. Second, if the plaintiff has actively litigated, then the defendant can attempt to overcome the presumption by presenting "direct evidence that the plaintiff acted solely for the purpose of preventing . . . remov[al]." *Bristol*, 2016 WL 6277198, at *4; *Aguayo*, 59 F. Supp. 3d at 1275-76. To rebut the good faith presumption, "[t]he Court wants a smoking gun or close to it." *Aguayo*, 59 F.Supp.3d at 1277.

GM argues that it should prevail on the first step of the *Aguayo* framework because Lam failed to actively litigate his claim against Thompson's Estate. Specifically, GM charges that Lam did not pursue meaningful discovery against Thompson's Estate or ask experts to develop theories of liability. Doc. [15] at 13. Plaintiffs counter that Lam did actively litigate against the Estate by making a valid claim, serving discovery, and negotiating and obtaining a settlement. Doc. [16] at 9-10.

The Court agrees with Plaintiffs. The *Aguayo* Court adopted a "wide-open view of what constitutes active litigation." 59 F.Supp.3d at 1275. A plaintiff can actively litigate claims by engaging in settlement negotiations and obtaining a settlement. *Bristol*, 2016 WL 6277198, at *4; *see also Northern*, 2019 WL 3934472, at *3. In *Bristol*, the plaintiff failed to take discovery, depose a corporate representative, or respond to a motion for summary judgment from a non-diverse defendant. *Id.* Still, the court, applying *Aguayo*, held that the plaintiff actively litigated against the defendant by negotiating and reaching a settlement. *Id.* at *4; *see also Northern*, 2019 WL 3934472, at *1-3 (plaintiff actively litigated against a non-diverse defendant by deposing her, defeating her motion for summary judgment, and engaging in settlement discussions, even though the plaintiff ultimately dismissed the non-diverse defendant after three years, without a settlement agreement, and days before the trial's start).

Here, Lam engaged in settlement discussions and reached a settlement with Thompson's Estate for the insurance policy limit. *See Thompson*, 2019 WL 7291229, at *2 (noting e-mails show settlement negotiations with Nikita Thompson's insurer before Nikita Thompson and his estate were added as defendants); Docs. [14] at 4, [1-7]. Lam also provides a plausible explanation for the relative paucity of discovery toward the Estate and for not relying on experts to develop theories of liability, explaining that video evidence provided sufficient factual

5

information and no depositions have been taken from any party. Doc. [16] at 10-11; *cf. Bristol*, 2016 WL 6277198, at *4 (finding plaintiff provided "plausible explanations" for lack of documented discovery and noting "even bare minimum" discovery is sufficient). Because Lam actively litigated his claims in state court, he is entitled to a presumption of good faith.

To overcome that presumption, GM must provide direct evidence of bad faith. GM fails to do so. GM's suggestion that the "totality of the circumstances" rebuts the presumption, *see* Doc. [15] at 13, is hardly the "smoking gun" that the *Aguayo* analysis requires, 59 F.Supp.3d at 1277. Further, Plaintiffs can plausibly explain all of GM's purported evidence of bad faith. *See Northern*, 2019 WL 3934472, at *3 (finding that, even assuming the plaintiff's counsel showed a pattern of dismissing non-diverse defendants on the eve of trial, there was no bad faith because the "[p]laintiff has given a plausible reason for her legal strategy"). Lam plausibly explains the delay before settlement, noting that the insurer did not offer that settlement until after the one-year time limit for removal had expired. *See* Docs. [16] at 10; [16-2]. He also provides a reasonable explanation for holding the funds in escrow—i.e., to avoid committing all funds toward legal expenses.[3] Doc. [16] at 11-12.

### III.  Plaintiffs are not entitled to costs, fees, expenses, or sanctions.

Plaintiffs request reasonable fees, expenses, and sanctions. *See* Doc. [16] at 15. That request will be denied. District courts may require removing defendants to pay just costs and actual expenses when remanding a case to state court. 28 U.S.C. § 1447(c). Courts should award fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The Court concludes that GM's attempt to remove this action was not objectively unreasonable. The timing of the settlement agreement, the settlement amount, and the relative lack of discovery toward Thompson's Estate lend sufficient credence to GM's allegation of bad faith. *Cf. Bristol*, 2016 WL 6277198, at *5 (attempted removal not unreasonable when state docket sheet showed no

---

[3] GM also suggests that Plaintiffs' inclusion of "two non-diverse defendants in the suit despite no viable claims against those parties" provides further evidence of Plaintiffs' bad faith. Doc. [15] at 13. But GM does not provide any support for a finding of bad faith under § 1446(c)(1) on that basis, and it is by no means self-evident that Plaintiffs' filing of a lawsuit against only Hunter and Joe-K, before later adding GM, can be characterized as "bad faith in order to prevent [GM] from removing the action." 28 U.S.C. § 1446(c)(1). Moreover, Plaintiff provides plausible strategic rationales for its litigation decisions vis-à-vis both Joe-K and Hunter, and GM does not purport to provide any direct evidence to counter those rationales. *See* Docs. [14] at 8-9, [16] at 13-14.

discovery toward non-diverse defendant).  This Memorandum and Order shall not disturb the authority of the Circuit Court of the City of St. Louis to require GM to pay costs, fees, or expenses arising out of GM's conduct in attempting to remove this action to federal court.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. [14]) is **GRANTED in part AND DENIED in part**.  The Motion is granted to the extent it seeks remand of the action to the Circuit Court of the City of St. Louis.  The Motion is denied to the extent it seeks an award of costs, fees, expenses, and sanctions.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Circuit Court of the City of St. Louis, Missouri.

Dated this 28th day of July, 2021.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE